## JONES v YOUNGSTOWN MUNI RY CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 9, 1936

Clinton Wall, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

This cause is in this court as an error proceeding seeking a reversal of the judgment of the trial court upon a verdict returned by the jury in favor of the defendant, upon the direction so to do by the trial court. The plaintiff in error, who was the plaintiff in the Court of Common Pleas, filed her petition against the defendant railway company, alleging its incorporation and its being engaged as a common carrier of passengers for hire, which was admitted in the answer. The plaintiff then further alleges that on or about ten-thirty o'clock P. M. on the 24th day of November, 1932, she boarded one of defendant's busses in the down town district, for the purpose of taking passage thereon to her destination at East Midlothian Boulevard and Sheridan Road, and paid her fare as such passenger; that when said bus approached said intersection she notified the operator thereof of her intention to alight; that the operator of the bus carelessly and negligently stopped said bus in such position that the door thereof was along side a depressed portion of the pavement a distance of more than six inches from the curb or westerly boundary of the pavement, requiring her to step into said depression of the pavement; that said condi-

tion of the pavement was not readily discernible in the darkness then and there existing, and that the defendant failed to give the plaintiff any notice or warning that she would be compelled to step down an excessive distance in alighting from said bus; that she then and there attempted to alight from said bus. stumbled and fell and sustained the injuries of which she complains, not necessary for present purposes to elaborate upon; that her said injuries were caused directly and proximately by and through the negligence of the defendant in the following respects, to-wit:

FIRST: In causing and permitting said bus to be stopped in such position that the door thereof was alongside said depressed portion of the pavement and more than six inches from the curb.

SECOND: In failing and neglecting to stop said bus at a reasonably safe place for plaintiff to alight.

THIRD: In failing and neglecting to give plaintiff any notice or warning of the dangerous and unsafe conditions aforesaid.

It is further alleged in the petition that there was in said city at all times mentioned a certain ordinance, duly enacted, passed and approved and in full force and affect, regulating the operation of vehicles over and upon public thoroughfares of said city, of which the following is a copy:

"Rule XIII. Except as hereinafter provided no vehicle shall stop on any street or highway except with the front and rear wheels within six inches of the curb, nor in any such way as to obstruct the free passage of the street; provided that nothing in this section shall be held to apply whenever the driver of the vehicle is compelled or permitted to stop by reason of other lawful regulations or emergencies."

The defendant, in its answer, admitted its incorporation as alleged and that it is a common carrier of passengers for hire, and maintains certain busses in the city of Youngstown, Ohio. The answer also includes the folllowing:

"Further answering, and for the purpose of requiring strict proof of all of the allegations of plaintiff's petition, this defendant says that it denies each and every statement and allegation in plaintiff's peti-

tion contained except as hereinbefore specifically admitted to be true."

Notwithstanding the answer by its terms denies the existence of the ordinance hereinbefore quoted, there is no contention in this case but that this ordinance was in full force and effect at the time of the accident. The issue thus created subsequently came on for trial in the Court of Common Pleas to a jury, at which the plaintiff first testified, then a witness identified the ordinance and a doctor testified concerning her injuries, then the plaintiff rested. Thereupon counsel for the defendant made the following motion:

"Now comes the defendant, at the close of plaintiff's evidence, and moves the court for an order arresting the testimony from the jury and directing a verdict in favor of the defendant; first, for the reason that there has been shown no actionable negligence on the part of the defendant proximately causing plaintiff's fall; second, that the plaintiff's own evidence raises a presumption of negligence on her part which is unrebutted."

Notwithstanding there was no allegation of contributory negligence in the answer of the defendant, if such negligence appeared in the evidence it was the right of the trial court to give it consideration and submit it as an issue to the jury. Following the submission of the motions the bill of exceptions further states:

"Motion sustained; exceptions to plaintiff."

There is nothing in this case by which it may be determined whether the trial court sustained the motion upon the theory that the plaintiff's testimony sufficiently indicated that she had been guilty of contributory negligence or upon the ground that her testimony did not constitute a cause of action against the defendant. It therefore becomes necessary to consider both of these propositions. The question now arises as to when a trial court may direct a verdict.

In the case of **Railroad Company v Whitacre, 35 Oh St, 627,** the first and second paragraphs of the syllabi read as follows:

"1. In an action for an injury, occasioned by negligence, where the circumstances require of plaintiff the exercise of due care to avoid the injury, and his testimony does not disclose any want of such care on his part, the burden is upon defendant to show such contributory negligence as will defeat a recovery.

2. But if plaintiff's own testimony in support of his cause of action raises a presumption of such contributory negligence, the burden rests upon him to remove that presumption."

In the case of **Baltimore & Ohio Railroad Company v McClellan, Admrx., 69 Oh St, 142,** the second paragraph of the syllabi reads:

"Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, and no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence, to direct a verdict * * *"

In the case of **Jacob Laub Baking Company v Middleton, 118 Oh St, 108,** it is said in the syllabi:

"When the proof of the essential facts put in issue and the reasonable inferences deducible therefrom are such that the jury, as fair minded men, should reasonably arrive at but one conclusion, it is the duty of the trial court to direct a verdict in favor of the party which such proof sustains."

In the case of **Painesville Utopia Theater Co. v Lautermilch, 118 Oh St, 167,** the syllabus reads:

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

In this case it was the duty of the plaintiff to support every essential allegation of her petition by some proof, and if the evidence introduced by her failed to establish such essential propositions, the case was subject to a motion for a directed verdict,

and if the evidence introduced by the plaintiff raised a clear presumption of negligence on her part which directly contributed to her injury and no evidence was offered by her tending to rebut that presumption, the trial court was authorized to direct a verdict.

The plaintiff gave testimony, in effect, that about twelve passengers alighted from the bus at the street intersection where the accident occurred, of which she was last. She testifies that in her judgment the step of the bus was sixteen to eighteen inches distant from the curb of the pavement. This testimony indicates that the bus in stopping, as above stated, violated the provisions of the ordinance hereinbefore quoted, requiring the bus to stop with its wheels within six inches of the curb. The plaintiff further said, in response to a question as to whether it was dark or light:

"A. Well, it was dark, kind of, you know.

Q. What, if any, other conditions were you able to observe?

A. It looked like the street, it looked like a black place and I didn't know whether there was something wrong in the street; I thought if I would step down in there I might sprain my ankle and I went to step on the curb and the end of my foot caught on the edge of the curb and throwed me.

Q. You say the tip end of your shoe hit the curb?

A. I went to step on it and I didn't get over far enough.

Q. Why couldn't you get over far enough?

A. Because it was too far away."

The plaintiff was the only witness testifying as to the manner of the accident, and her testimony was thus uncontradicted. Assuming this uncontradicted testimony to be true, does it indicate negligence on the part of the defendant, or negligence on the part of the plaintiff herself, directly contributing to produce the injury of which she complains?

The bus had stopped to permit passengers so desiring to alight. All of the others so minded preceded the plaintiff. Whether they stepped down on to the pavement and then over the curb, or whether they stepped from the step of the bus to or over the curb, the evidence does not disclose. As the last passenger alighting she might naturally have felt some inducement for haste before the bus started. The pavement appeared to be dark and in a depressed condition. She therefore decided, in the emergency for prompt alighting, that it was preferable to step over this space of sixteen or eighteen inches to the curb, not a long distance for an ordinary person to step, but under the circumstances she failed to step quite far enough, struck her foot against the curb there and received injuries. If the defendant company had obeyed the ordinance and stopped within six inches of the curb there would have been no opportunity or reason for stepping on to the pavement, and the person so alighting might reasonably be expected to step on to or over the curb or attempt to so do. The defendant was guilty of negligence in so stopping the bus for passengers to alight at the distance from the curb indicated by the testimony. It is clearly indicated that such negligence was a proximate and direct contributing cause of the accident. Whether or not the plaintiff was guilty of contributory negligence in so attempting to alight, if it is susceptible of being designated negligence, it was, in any event, a condition necessarily requiring submission to a jury. It is not such an act as was clearly negligence, and an error of the court so assuming and directing the jury to so find.

Plaintiff in error cites the case of **McCaffrey v Youngstown Municipal Railway Company, 18 Abs 98,** a decision by this court when to some extent differently constituted. It is said in the opinion:

"The opening statement clearly showed the violation of a city ordinance. However, it also shows that the injury to the plaintiff was in no way attributable to the violation of this ordinance. **Had the injury occurred to the plaintiff after she alighted from the bus and while attempting to arrive at the curb and sidewalk, then the failure on the part of the bus line to comply with this requirement would be negligence per se.**"

In this connection it may be generally stated that it was the duty of the defendant, even in the absence of the ordinance, to afford the passenger a reasonably safe place to alight and reasonably safe opportunity to depart from the vehicle. The above case was cited and quotation made therefrom by both counsel for plaintiff and defendant.

In the case of **Crooks v Cleveland Railway Company, 11 Abs 129,** it is said:

"The duty of the carrier to discharge a passenger at his destination in a safe manner and at a safe place is not disputed. Applying it to the case at bar we are of the opinion that it becomes a question of fact under the particular circumstances of the case, as to whether the duty was fully discharged toward plaintiff who was a passenger."

In the case of **Cleveland Railway Company v Crooks, 125 Oh St, 280,** it is said, on page 282:

"We are in accord with the law that the relation of carrier and passenger ceases when the person of the passenger parts company with the carrier's vehicle, but the Court of Appeals very properly held that the railway company owed this passenger an antecedent duty to do nothing that would tend to subject the passenger to anything more than the usual and ordinary perils of traffic; that if it created a condition that had such a tendency, a question of fact was made for the jury."

Counsel for the defendant in error cites the case of **Carroll v Youngstown Municipal Railway Company, 18 Abs 9.** The opinion in that case was written by the writer hereof, and it is sufficient to say that it did not involve a pertinent question in this case. As a common carrier ▮▮▮ it was the duty of the company to exercise the highest practical degree of care.

After a perusal of the pleadings, the bill of exceptions and the briefs, this court is of the opinion that the evidence of the plaintiff below was such, in the presence of a directed verdict, to require the overruling of such motion upon the two propositions of negligence of the defendant and negligence of the plaintiff, that an issue of fact was presented to require the submission thereof to the jury. The judgment of the Court of Common Pleas is therefore reversed and the cause remanded.

Judgment reversed.

CARTER and NICHOLS, JJ, concur.